UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| ELIZABETH PALISOC AGNIR, | ) | Case No.: 12-CV-04470-LHK |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | ORDER GRANTING DEFENDANTS' |
| | ) | MOTION TO DISMISS; GRANTING IN |
| THE GRYPHON SOLUTIONS, LLC a | ) | PART AND DENYING IN PART |
| California Limited Liability Company; | ) | DEFENDANTS' MOTION TO STRIKE; |
| MICHAEL CHARLES BRKICH, individually | ) | DENYING AS MOOT PLAINTIFF'S |
| and in his official capacity; JAY MICHAEL | ) | APPLICATION FOR DISCOVERY |
| TENENBAUM, individually and in his official | ) | |
| capacity; IAN NATHAN WILLENS, | ) | |
| individually and in his official capacity, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Elizabeth Palisoc Agnir ("Agnir" or "Plaintiff") brings this action against

Defendants Gryphon Solutions, LLC ("Gryphon Solutions"); Michael Charles Brkich; Jay Michael

Tanenbaum; and Ian Nathan Willens (collectively, "Defendants").  Defendants have filed a Motion

to Dismiss, seeking to dismiss all of Plaintiff's claims pursuant to Federal Rule of Civil Procedure

12(b)(6) for failure to state a claim on which relief may be granted.  ECF No. 43 ("Motion to

Dismiss").  Defendants have also filed a Motion to Strike, which seeks to strike pursuant to Federal

Rule of Civil Procedure 12(f) Plaintiff's first, second, and third causes of action, and further seeks

to strike Plaintiff's state law claims pursuant to California's anti-SLAPP statute.  ECF No. 44

1

1   ("Motion to Strike").  Additionally, Plaintiff has filed an Application for Discovery Pursuant to

2   Federal Rule of Civil Procedure 56(d), ECF No. 55 ("Application for Discovery").  A hearing was

3   held on the pending motions on July 18, 2013 (the "July 18 hearing").  Having considered the

4   arguments and submissions of the parties and the relevant law, the Court hereby GRANTS

5   Defendants' Motion to Dismiss, GRANTS in part and DENIES in part Defendants' Motion to

6   Strike, and DENIES as moot Plaintiff's Application for Discovery.

7   **I.      BACKGROUND**

8        **A.      Factual Allegations**

9        In this Action, Agnir alleges that her personal identifying information was used to obtain a

10   revolving consumer credit account issued by Chase Bank USA, N.A. ("Chase") in Agnir's name

11   (the "Chase account").  Amended Complaint, ECF No. 40 ("AC"), ¶ 15.  Agnir alleges that

12   Defendants improperly pursued and attempted to collect a default judgment related to the Chase

13   account, thereby violating Cal. Civ. Code §§ 1798.92-1798.97 protections for victims of identity

14   theft, the federal Fair Debt Collection Practices Act, and the California Rosenthal Fair Debt

15   Collection Practices Act.

16        On or about December 19, 2005, Chase filed a lawsuit against Agnir in the Superior Court

17   of California, Santa Clara County (the "Superior Court"), captioned *Chase Bank USA, N.A. v.*

18   *Elizabeth P. Diamos, et al.*, Case No. 05-054805 (the "Superior Court Action"), in which Chase

19   attempted to collect debt incurred on the Chase account.  AC ¶ 19.  Agnir alleges that, although a

20   process server signed a Proof of Service of Summons representing that Agnir had been served by

21   substitute service, Agnir in fact was never served, and was unaware of the Superior Court Action

22   until June of 2011.  AC ¶ 20.  On or about May 2, 2006, Chase requested and was granted a default

23   judgment by the Clerk of the Superior Court in the Superior Court Action (the "Default Judgment").

24   AC ¶ 21.

25        Agnir alleges that in January of 2007, she discovered that she had been a victim of identity

26   theft "on a separate and unrelated account alleged to be owed to Asset Acceptance, LLC" (the

27   "Asset Acceptance account").  AC ¶ 22.  Agnir alleges that on or about January 29, 2007, she filed

28

2

**United States District Court**
For the Northern District of California

a police report with the Sunnyvale Police Department in which she raised allegations of identity theft with regard to the Asset Acceptance account.  *Id.*

Agnir alleges that in February of 2007, she discovered that the Chase account was appearing on her consumer credit reports.  AC ¶ 23.  An attorney provided by Agnir's prepaid legal plan assisted Agnir in sending a letter disputing the Chase account to the three consumer credit bureaus.  *Id.*  Agnir alleges that she believed that the fraudulent account had been resolved with Chase in February of 2007, by sending the dispute letter to the three credit bureaus.  *Id.*

Agnir alleges that on or about September 24, 2008, Chase assigned the Default Judgment against Agnir to Cach, LLC, who then assigned it to Defendant Gryphon Solutions on or about December 28, 2010.  AC ¶¶ 24, 25.

On May 9, 2011, Defendant Gryphon Solutions and its employee, Defendant Jay Michael Tenenbaum ("Tenenbaum"), filed an Affidavit of Identity and Request to Amend Judgment in the Superior Court Action, seeking to amend Agnir's name on the Default Judgment to Elizabeth P. Agnir.  AC ¶ 28.  The Default Judgment was amended on the same date.  *Id.*  Agnir alleges that in June of 2011, she received by mail a copy of Defendants' Affidavit of Identity and Request to Amend Judgment.  AC ¶ 29.  Agnir alleges that this was the first time that she received notice or had any knowledge of the Superior Court Action.  *Id.*

On August 29, 2011, Agnir alleges that her counsel sent a letter to Defendants requesting a stipulation to set aside the Entry of Default and Default Judgment in the Superior Court Action.  AC ¶ 31.  Agnir's counsel provided a copy of the Sunnyvale Police Report (regarding the Asset Acceptance account), and a notarized Federal Trade Commission Identity Theft Victim's Complaint and Affidavit.  *Id.* and Exh. 1.

On September 7, 2011, Agnir alleges that Defendant Tenenbaum spoke twice by telephone with Agnir's counsel's office, and refused to voluntarily set aside the Entry of Default and Default Judgment against Agnir.  AC ¶¶ 32, 33.  Agnir alleges that Tenenbaum stated that he thought service was proper, that Agnir should have addressed the issue in 2007 when the prepaid legal service helped her, that Defendants believed they could overcome the Motion to Set Aside, and that

3

the claim of identity theft did not apply in this case because the Chase account was opened while

Agnir was married to the alleged identity thief.  AC ¶ 32.  Agnir alleges that Tenenbaum held

himself out as eligible to practice law although his license to practice law had been suspended.  *Id.*

On September 8, 2011, Agnir filed a Motion to Set Aside Default and Vacate Default Judgment

("Motion to Set Aside Default").  AC ¶ 33.

On or about September 27, 2011, Defendants filed an opposition to Agnir's Motion to Set

Aside Default ("Opposition to Setting Aside Default"), arguing that service of process under

California Code of Civil Procedure, Section 415.20, had been effectuated.  AC ¶ 34.  On or about

October 11, 2011, the Superior Court set aside the Entry of Default and vacated the Default

Judgment against Agnir.  AC ¶ 35.  On October 26, 2011, Defendants dismissed the Superior Court

Action against Plaintiff without prejudice.  AC ¶ 36.

**B.**     **Procedural History**

Agnir filed her Complaint in the instant action on August 24, 2012.  ECF No. 1.  Defendants

initially filed a Motion to Dismiss before Magistrate Judge Howard R. Lloyd on September 10,

2012.  ECF No. 10.  The case was reassigned to the undersigned Judge on September 21, 2012.

ECF No. 13.  Defendants re-noticed their Motion to Dismiss on September 24, 2012, ECF No. 16,

and filed a Motion to Strike Agnir's Complaint on September 25, 2012, ECF No. 17.  On

September 28, 2012, Defendants filed another Motion to Strike, ECF No. 19, an Amended Motion

to Strike, ECF No. 20, and an Amended Motion to Dismiss, ECF No. 21.  On October 22, 2012,

Agnir filed an Opposition to the Amended Motion to Dismiss, ECF No. 26, and an Opposition to

the Amended Motion to Strike, ECF No. 27.  On February 20, 2013, Defendants withdrew their

pending Amended Motion to Dismiss and Amended Motion to Strike, and filed a stipulation

permitting the filing of an Amended Complaint.  ECF No. 36; ECF No. 37.  The Court granted the

stipulation of February 21, 2013.  ECF No. 38.

On March 4, 2013, Agnir filed her Amended Complaint.  *See* AC.  On March 18, 2013,

Defendants filed the instant Motion to Dismiss and Motion to Strike, ECF Nos. 43 and 44, and a

Request for Judicial Notice in Support of Motion to Dismiss, ECF No. 43-1 ("Defendants' RJN").

Case No.: 12-CV-04470-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS; GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO STRIKE; DENYING AS MOOT PLAINTIFF'S APPLICATION FOR DISCOVERY

United States District Court
For the Northern District of California

On May 10, 2013, Agnir filed an Opposition to the Motion to Dismiss, ECF No. 56 ("Opp'n to Mot. to Dismiss"), and an Opposition to the Motion to Strike, ECF No. 54 ("Opp'n to Mot. to Strike"). The Opposition to the Motion to Strike included a Request for Judicial Notice, ECF No. 54-1 ("Plaintiff's RJN"), and was accompanied by an Application for Discovery, ECF No. 55 ("Application for Discovery"). On June 3, 2013, Defendants filed an Administrative Motion for Leave to File Late Reply Brief/Enlarge Time, ECF No. 57, which the Court granted on June 5, 2013. ECF No. 60. On June 4, 2013, Defendants filed a Reply in Support of the Motion to Dismiss, ECF No. 58, and a Reply in Support of the Motion to Strike, ECF No. 59.

On April 17, 2013, the Court held an initial Case Management Conference in which the Court set the case schedule, and stayed discovery until the hearing on Defendants' pending motions. *See* ECF No. 51.

## II.    LEGAL STANDARDS

### A.    Rule 12(f) Motion to Strike

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *See* Fed. R. Civ. P. 12(f). "Motions to strike are generally disfavored." *Cruz v. Bank of New York Mellon*, No. 12-00846, 2012 WL 2838957, at *2 (N.D. Cal. July 10, 2012) (citation omitted). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). "Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court." *Cruz*, 2012 WL 2838957, at *2 (citing *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010)).

### B.    Motion to Dismiss Under Rule 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

5

United States District Court
For the Northern District of California

1   liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability

2   requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

3   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).  For purposes of ruling on a

4   Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and

5   construe[s] the pleadings in the light most favorable to the non-moving party."  *Manzarek v. St.*

6   *Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

7        Nonetheless, the Court need not accept as true allegations contradicted by judicially

8   noticeable facts, and the "[C]ourt may look beyond the plaintiff's complaint to matters of public

9   record" without converting the Rule 12(b)(6) motion into one for summary judgment.  *Shaw v.*

10  *Hahn*, 56 F.3d 1128, 1129, n.1 (9th Cir. 1995), *cert. denied*, 516 U.S. 964 (1995); *see Van Buskirk*

11  *v. Cable News Networks, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Shwarz v. United States*, 234 F.3d

12  428, 435 (9th Cir. 2000).  Nor is the Court required to "assume the truth of legal conclusions merely

13  because they are cast in the form of factual allegations."  *Fayer v. Vaughn*, 649 F.3d 1061, 1064

14  (9th Cir. 2011) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).  Mere

15  "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to

16  dismiss."  *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) (internal quotation marks and

17  citations omitted); *accord Iqbal*, 556 U.S. at 663.  Furthermore, "'a plaintiff may plead [him]self

18  out of court" if he "plead[s] facts which establish that he cannot prevail on his . . . claim."

19  *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997).

20        **C.     Anti-SLAPP Motion to Strike**

21        "A SLAPP suit—a strategic lawsuit against public participation—seeks to chill or punish a

22  party's exercise of constitutional rights to free speech and to petition the government for redress of

23  grievances."  *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1055 (2006) (citing *Briggs v. Eden Council for*

24  *Hope & Opportunity*, 19 Cal. 4th 1106, 1109 n.1 (1999)).  California's legislature enacted Cal. Civ.

25  Proc. Code § 425.16, the anti-SLAPP statute, to provide a procedural remedy allowing courts "to

26  promptly expose and dismiss meritless and harassing claims seeking to chill protected expression."

27  *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010) (internal quotation marks and

28

Case No.: 12-CV-04470-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS; GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO STRIKE; DENYING AS MOOT PLAINTIFF'S APPLICATION FOR DISCOVERY

citation omitted); *see* Cal Civ. Proc. Code § 425.16(a), (b).  "To encourage 'continued participation in matters of public significance,'" the statute is to be "construed broadly."  *Simpson Strong-Tie Co. v. Gore*, 49 Cal. 4th 12, 21 (2010) ((quoting Cal. Civ. Proc. Code § 425.16(a)); *accord Mindys Cosmetics*, 611 F.3d at 595.

The anti-SLAPP statute provides that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  Cal. Civ. Proc. Code § 425.16(b).  A special motion to strike brought under the anti-SLAPP statute involves a two-step analysis.  "First, the defendant must make a prima facie showing that the plaintiff's cause of action arises from an act by the defendant in furtherance of the defendant's right of petition or free speech in connection with a public issue."  *Simpson Strong-Tie*, 49 Cal. 4th at 21 (internal quotation marks and alterations omitted).  Second, if the defendant makes this prima facie showing, then "the cause of action shall be stricken unless the plaintiff can establish a probability that the plaintiff will prevail on the claim."  *Id. Cf. Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013) (discussing two-step burden shifting analysis).

To establish a probability of prevailing on the claim, a responsive plaintiff must "state and substantiate a legally sufficient claim."  *Rusheen*, 37 Cal. 4th at 1056 (internal quotation marks and alterations omitted).  The plaintiff's burden at step two, however, is a relatively low one.  *See Roberts*, 660 F.3d at 1163 ("In the anti-SLAPP context, 'probability' is a low bar.").  To withstand a special motion to strike, the plaintiff need only show a "minimum level of legal sufficiency and triability," or "minimal merit."  *Mindys Cosmetics*, 611 F.3d at 598 (quoting *Linder v. Thrifty Oil Co.*, 23 Cal. 4th 429, 438 n.5 (2000), and *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 133 Cal. App. 4th 658, 675 (2005), respectively).

## III.    REQUESTS FOR JUDICIAL NOTICE

**United States District Court**
For the Northern District of California

1        Both Plaintiff and Defendants have filed Requests for Judicial Notice.  *See* Defendants'

2  RJN; Plaintiff's RJN.  No opposition has been filed to either Request for Judicial Notice.

3        All of the documents in Defendants' RJN are also included in Plaintiff's RJN, as noted

4  below.  Plaintiff's RJN requests judicial notice of the following exhibits, all of which are

5  documents from the Superior Court Action: (A) the Complaint, filed on December 19, 2005; (B) the

6  Proof of Service of Summons, filed on February 14, 2006[1]; (C) the Request for Entry of Default

7  and Clerk's Judgment, filed on May 2, 2006; (D) the Request for Dismissal as to Doe Defendants,

8  filed on May 2, 2006; (E) the Declaration in Support of Entry of Default Judgment, filed on May 2,

9  2006; (F) the Declaration Re: Lost Original Contract and Waiver of Excess Interest, filed on May 2,

10  2006; (G) the Declaration Pursuant to CCP 1033, filed on May 2, 2006; (H) the Clerk's Judgment

11  by Default, filed on May 16, 2006[2]; (I) the Assignment of Judgment, filed on May 9, 2011[3]; (J) the

12  Affidavit of Identity and Request to Amend Judgment, filed on May 9, 2011[4]; (K) the Order

13  Amending Judgment, filed on May 9, 2011; (L) the Notice of Motion and Motion to Set Aside

14  Default and Vacate Default Judgment, filed on September 8, 2011; (M) the Memorandum of Points

15  and Authorities in Support of Motion to Set Aside Default and Vacate Default Judgment, filed on

16  September 8, 2011 ("Motion to Set Aside Default"); (N) the Declaration of Elizabeth P. Agnir in

17  Support of Motion to Set Aside Default and Vacate Default Judgment, filed on September 8, 2011;

18  (O) the Declaration of Fred W. Schwinn in Support of Motion to Set Aside Default and Vacate

19  Default Judgment, filed on September 8, 2011; (P) the Proof of Service, filed on September 8,

20  2011; (Q) the Opposition to Motion to Set Aside Default and Vacate Default Judgment, filed on

21  September 28, 2011 ("Opposition to Setting Aside Default")[5]; (R) the Reply in Support of Motion

22  to Set Aside Default Judgment, filed on October 3, 2011; (S) the Order Granting Motion to Set

23

24  [1] Defendants' RJN, Exh. 4.  Defendants' RJN entitles this document "Proof of Service—[Superior Court Action], May 16, 2006."  However, the document attached as Exhibit 4 is a proof of service file stamped "February 14, 2006."

25

26  [2] Defendants' RJN, Exh. 1.
[3] Defendants' RJN, Exh. 2.

27  [4] Defendants' RJN, Exh. 3.
[5] Defendants' RJN, Exh. 5.  Defendants' RJN states that this document was filed on September 20,

28  2011, in the Superior Court Action.  However, the document is signed September 27, 2011, and file stamped "September 28, 2011."

8

United States District Court
For the Northern District of California

1 │ Aside Default and Vacate Default Judgment, filed on September 8, 2011; (T) the Notice of Entry of

2 │ Order, filed on October 11, 2011; (U) Agnir's First Amended Answer to Complaint, filed on

3 │ October 14, 2011[6]; (V) the Request for Dismissal Without Prejudice, filed on October 26, 2011;

4 │ (W) the Memorandum of Costs, filed on November 23, 2011; (X) the Judgment of Dismissal, filed

5 │ on November 30, 2011; and (Y) the Notice of Entry of Judgment, filed on December 9, 2011.

6 │        While a district court generally may not consider any material beyond the pleadings in

7 │ ruling on a Rule 12(b)(6) motion, a court may take judicial notice of documents referenced in the

8 │ complaint, as well as matters in the public record, without converting a motion to dismiss into one

9 │ for summary judgment.  *See Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001).  A matter may

10 │ be judicially noticed if it is either "generally known within the trial court's territorial jurisdiction"

11 │ or "can be accurately and readily determined from sources whose accuracy cannot reasonably be

12 │ questioned." Fed. R. Evid. 201(b).  However a court may not take judicial notice of a fact in the

13 │ public record that is "subject to reasonable dispute."  *Id.*   In particular, "[w]hen a court takes

14 │ judicial notice of another court's opinion, it may do so 'not for the truth of the facts recited therein,

15 │ but for the existence of the opinion, which is not subject to reasonable dispute over its

16 │ authenticity.'"  *Lee*, 250 F.3d at 690 (citation omitted).[7]

17 │        Accordingly, because all of the documents submitted in the parties' respective requests for

18 │ judicial notice are filings in the Superior Court Action, part of the public record, and thus not

19 │ subject to reasonable dispute, the Court GRANTS both parties' Requests for Judicial Notice of the

20 │ existence of these documents, but not the disputed contents therein.  *See* Fed. R. Evid. 201(b); *Lee*,

21 │ 250 F.3d at 690.

22 │ **IV.    DISCUSSION**

23 │

24 │

─────────────────────────

[6] Defendants' RJN, Exh. 6.

[7] In *Lee*, the reviewing court found that the district court was correct in taking judicial notice of "the *fact* of the extradition hearing, the *fact* that a Waiver of Extradition was signed by [plaintiff], and the *fact* that [plaintiff] purportedly waived his right to challenge his extradition . . ." *Lee*, 250 F.3d at 689-90 (emphasis in original).  However, the district court erred by taking judicial notice of the disputed facts underlying those documents, by, for example, presuming the validity of the waiver of extradition which the plaintiff was challenging.  *Id.*

Case No.: 12-CV-04470-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS; GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO STRIKE; DENYING AS MOOT PLAINTIFF'S APPLICATION FOR DISCOVERY

1   Agnir's first cause of action seeks a declaration that she is a victim of identity theft and an

2   award of actual damages, statutory damages, injunctive relief, attorney's fees and costs under

3   California Civil Code §§ 1798.92-1798.97, which protects victims of identity theft from creditor

4   collections on debts arising out of the theft of an individual's identity.  Agnir's second cause of

5   action seeks actual damages, statutory damages, and attorney's fees and costs under the Fair Debt

6   Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA").  Her third cause of action seeks the

7   same remedies under California's Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §

8   1788 *et seq.* ("RFDCPA").

9   Below, the Court first addresses Defendants' request to strike Plaintiffs' second and third

10   causes of action pursuant to Federal Rule of Civil Procedure Rule 12(f).  *See* Mot. to Strike at 5-7.

11   The Court then addresses Defendants' motion to dismiss all of Plaintiff's causes of action pursuant

12   to Federal Rule of Civil Procedure Rule 12(b)(6).  *See generally* Mot. to Dismiss.  Lastly, the Court

13   addresses Defendants' anti-SLAPP motion to strike Plaintiff's state law causes of action.  *See* Mot.

14   to Strike at 7-17.

15   **A.      Rule 12(f) Motion to Strike**

16   The Court begins by briefly addressing Defendants' Rule 12(f) motion to strike the second

17   and third causes of action as to all Defendants.[8]  *See* Mot. to Strike at 5-7.   Defendants represented

18   to the Court that these claims are barred by the one-year limitations period under 15 U.S.C. §

19   1692k, thus depriving the Court of jurisdiction.  *See* Mot. to Strike at 5 (citing *Mattson v. U.S. W.*

20   *Commc'ns, Inc.*, 967 F.2d 259, 260 (8th Cir. 1992)).  In fact, the Ninth Circuit has held that the

21   statute of limitations of 15 U.S.C. 1692k is not jurisdictional in nature.  *See Mangum v. Action*

22   *Collection Servs., Inc.*, 575 F.3d 935, 940 (9th Cir. 2009).  Moreover, the Court notes that Agnir has

23   alleged liability based on actions taken by Defendants within the one year statute of limitations,

24   including Defendants' alleged failure to properly investigate Agnir's claim of identity theft, and

25   Defendants' Opposition to Setting Aside Default.  Whether these allegations are legally sufficient to

26   serve as the basis of liability is a question discussed below under the standards set out by Rule

27

28   _____

[8] Defendants do not move to strike the factual allegations related to these causes of action.

10

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1   12(b)(6), in the Court's discussion of Defendants' Motion to Dismiss.  Regardless of the Court's

2   ruling on the Motion to Dismiss, Defendants have failed to provide any basis for the Court to find

3   that Agnir's second and third causes of action are "redundant, immaterial, impertinent, or

4   scandalous matter."  Fed. R. Civ. P. 12(f).  Accordingly, the Court DENIES Defendants' Rule 12(f)

5   motion to strike.

6   **B.      Rule 12(b)(6) Motion to Dismiss**

7   **1.      First Cause of Action**

8           Agnir's first cause of action seeks to establish that Agnir is a "victim of identity theft" for

9   the purposes of California Civil Code Section 1798.93 ("Actions and Judgment for Identity Theft"),

10  with respect to Defendant Gryphon Solutions' claim against Agnir.[9]  AC ¶¶ 51; 56.  California Civil

11  Code Section 1798.93(c) provides in relevant part:

12          A person who proves that he or she is a victim of identity theft, as to a particular
            claim, shall be entitled to a judgment providing all of the following, as
13          appropriate:
            (1) A declaration that he or she is not obligated to the claimant on that claim. . . . .
14          (3) An injunction restraining the claimant from collecting or attempting to collect
            from the victim on that claim . . . or from enforcing or executing on any judgment
15          against the victim on that claim. . . .
            (5) Actual damages, attorney's fees, and costs, and any equitable relief that the
16          court deems appropriate. . . .
            (6) A civil penalty, in addition to any other damages, of up to thirty thousand
17          dollars ($30,000) if the victim establishes by clear and convincing evidence all of
            the following:
18          (A) [requisite notice to the claimant].
            (B) That the claimant failed to diligently investigate the victim's notification of a
19          possible identity theft.
20          (C) That the claimant continued to pursue its claim against the victim after the
            claimant was presented with facts that were later held to entitle the victim to a
21          judgment pursuant to this section.

22          Agnir seeks all of the above remedies.  AC ¶¶ 56-59.

23

24

25

26  _____

[9] "Victim of identity theft" is defined for purposes of this statute as "a person who had his or her
27  personal identifying information used without authorization by another to obtain credit, goods,
    services, money, or property, and did not use or possess the credit, goods, services, money, or
28  property obtained by the identity theft, and filed a police report in this regard pursuant to Section
    530.5 of the Penal Code."  Cal Civ. Code § 1798.92(d).

11

Although Defendants raise numerous objections to Agnir's first cause of action, the Court finds dispositive Defendants' assertion that this cause of action is barred as a compulsory counterclaim that should have been raised in the Superior Court Action.  *See* Mot. to Dismiss at 9-10.

California's compulsory counterclaim statute, California Code of Civil Procedure Section 426.30, is "designed to prevent 'piecemeal litigation.'"  *Align Tech., Inc. v. Bao Tran*, 179 Cal. App. 4th 949, 959 (2009) (citing *Carroll v. Import Motors, Inc.*, 33 Cal. App. 4th 1429, 1436 (1995)).  The statute provides in relevant part:

> Except as otherwise provided by statute, if a party against whom a complaint has been filed and served fails to allege in a cross-complaint any related cause of action which (at the time of serving his answer to the complaint) he has against the plaintiff, such party may not thereafter in any other action assert against the plaintiff the related cause of action not pleaded.

California courts have held that both California Code of Civil Procedure Section 426.30 and its predecessor statute (former California Code of Civil Procedure Section 439) must be liberally construed to effectuate their purpose of avoiding a multiplicity of actions.  *See Align Tech., Inc.*, 179 Cal. App. 4th at 959 (collecting cases).

Agnir does not dispute that her first cause of action is related to the Superior Court Action for the purposes of California Code of Civil Procedure Section § 426.30.  A "related cause of action" is defined as "a cause of action which arises out of the same transaction, occurrence, or series of transactions or occurrences as the cause of action which the plaintiff alleges in his complaint."  Cal. Civ. Proc. Code § 426.10(c).  Agnir's claim that she is the victim of identity theft as to the Chase account that is the subject of the instant litigation arises out of the same transactions or occurrences as the Superior Court Complaint, which alleges that Agnir and Does 1 to 10 applied for and requested a credit card from Chase, and incurred charges thereon.  *See* Plaintiff's RJN, Exh. A. ¶¶ 6-9.

Rather, Agnir argues that Section 426.30 does not apply because Agnir was not initially served in the Superior Court Action, and "never had an opportunity to respond, much less bring a compulsory counterclaim."  Opp'n to Mot. to Strike at 13.  Agnir maintains that "upon the Superior

12

United States District Court
For the Northern District of California

1    Court setting aside the judgment and vacating the default, Defendants promptly dismissed the case

2    without prejudice." *Id.*

3        Plaintiff's account conveniently omits crucial details which Plaintiff alleged in her

4    Amended Complaint in the instant action, and of which Plaintiff has requested that the Court take

5    judicial notice. *See* Plaintiff's RJN. Although Plaintiff was not initially served in the Superior

6    Court Action, Plaintiff obtained a copy of the state court lawsuit file from the Superior Court clerk

7    after learning of the lawsuit in June of 2011. AC ¶ 30. Moreover, Plaintiff appeared in the action

8    represented by current counsel not only by filing the Motion to Set Aside Default, but also by filing

9    a First Amended Answer on October 14, 2011, prior to the dismissal of the Superior Court Action.

10   *See* Plaintiff's RJN, Exh. U.[10]

11       Pursuant to Cal. Civ. Proc. Code § 426.30, Agnir's First Amended Answer—in which Agnir

12   specifically raised identity theft as her twenty-fifth affirmative defense, *see id.* at 7—was the proper

13   context to raise the identity theft allegations that she now asserts. California courts have made clear

14   that Cal. Civ. Proc. Code § 426.30 bars compulsory counterclaims even if no final judgment was

15   reached on the merits of the first action, as is the case in the instant litigation. For example, in *AL*

16   *Holding Co. v. O'Brien & Hicks, Inc.*, 75 Cal. App. 4th 1310, 1314 (1999), a plaintiff argued that

17   California Code of Civil Procedure section 426.30 should not apply when the initial action had been

18   voluntarily dismissed. The court rejected this argument, holding that the "critical time period to

19   which section 426.30 looks is that point in time when . . . the defendant '*fails* to allege in a cross-

20   complaint any related cause of action which (at the time of serving his answer to the complaint) he

21   *has* against the plaintiff.'" *Id.*, 75 Cal. App. 4th at 1313-14 (quoting Cal. Civ. Proc. Code 426.30.

22   Similarly, in *Align Technology, Inc. v. Bao Tran*, the court explained that, while causes of action

23   that arose after the filing of the complaint may be, but are not required to be, asserted in the original

24   action, related causes of action that exist at the time of service of the answer to the complaint are

25   governed by Cal. Civ. Code § 426.30. *Align Tech, Inc.*, 179 Cal. App. 4th at 970 (2009) (citation

26

27   ----
[10] Defendants' RJN, Exh. 6. Defendants' dismissal of the Superior Court Action was not served
     until October 21, 2011, and not entered until October 26, 2011. Plaintiffs' RJN, Exh. V;
28   Defendants' RJN, Exh. 7.

Case No.: 12-CV-04470-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS; GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO STRIKE; DENYING AS MOOT PLAINTIFF'S APPLICATION FOR DISCOVERY

United States District Court
For the Northern District of California

1   omitted).  *Cf. Swain v. CACH, LLC*, 699 F. Supp. 2d 1117, 1122 (N.D. Cal. 2009) (finding that Cal.

2   Civ. Proc. Code § 426.30 barred a compulsory counterclaim that should have been brought in a

3   previous debt collection case that had been dismissed without prejudice).

4          At the July 18 hearing, Plaintiff's counsel raised for the first time a new argument,

5   contending that California's compulsory counterclaim statute does not apply to California Civil

6   Code Section 1798.93, Plaintiff's first cause of action. Plaintiff's counsel cited language from

7   Section 1798.93(a), which provides that "[i]f the claimant has brought an action to recover on its

8   claim against the [alleged victim of identity theft], the [alleged victim] may file a cross-complaint to

9   establish that [he or she] is a victim of identity theft in connection with the claimant's claim."

10  Plaintiff's counsel argued that the permissive language of the statute implicitly overrides

11  California's compulsory counterclaim statute.  However, Plaintiff's counsel cited no authority for

12  this position, and failed to persuade the Court that this ambiguous language renders California's

13  compulsory counterclaim statute inapplicable, in light of the liberal construction afforded to the

14  latter statute to "avoid[] a multiplicity of actions."  *Align Tech., Inc.*, 179 Cal. App. 4th at 959.

15  Moreover, by omitting the argument from briefing, Plaintiff's counsel deprived Defendants of the

16  opportunity to respond to it.  Accordingly, Plaintiff's new argument should also be rejected for

17  untimeliness.  *See Day v. Sears Holdings Corp.*, No. 11-09068, 2013 WL 1010547, at *9 (C.D. Cal.

18  Mar. 13, 2013) (declining to address arguments raised for the first time at hearing).

19         In sum, Agnir does not dispute that the allegations giving rise to her cause of action for

20  identity theft in the instant action are related to the allegations of the complaint in the Superior

21  Court Action.  Nor does she dispute that this cause of action arose prior to the filing of her First

22  Amended Answer on October 14, 2011, or that it could have been raised in that Answer.  Rather,

23  she argues that she "never had an opportunity to respond, much less bring a compulsory

24  counterclaim," and thus fails to acknowledge or explain the fact that she filed a First Amended

25  Answer, in which she raised identity theft as an affirmative defense, but did not include the cause of

26  action which she currently seeks to pursue in a subsequent action in federal court.  *See* Opp'n to

27  Mot. at 13.  Accordingly, the Court finds that this cause of action is barred as a compulsory

28

Case No.: 12-CV-04470-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS; GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO STRIKE; DENYING AS MOOT PLAINTIFF'S APPLICATION FOR DISCOVERY

United States District Court
For the Northern District of California

1   counterclaim, and GRANTS Defendants' motion to dismiss Agnir's first cause of action.[11]

2                    **2.       Second Cause of Action**

3          Agnir's second cause of action alleges violations of the Fair Debt Collection Practices Act

4   ("FDCPA").  The FDCPA "is designed to protect consumers who have been victimized by

5   unscrupulous debt collectors, regardless of whether a valid debt actually exists."  *Baker v. G.C.*

6   *Servs. Corp*, 677 F.2d 775, 777 (9th Cir. 1982).  Congress enacted the FDCPA to "eliminate the

7   recurring problem of debt collectors dunning the wrong person or attempting to collect debts which

8   the consumer has already paid."  *Swanson v. Southern Or. Credit Serv.*, 869 F.2d 1222, 1225 (9th

9   Cir. 1988) (per curiam) (citing S. Rep. No. 382, at 4, 95th Cong. 2d Sess. 4, *reprinted in* 1977

10  U.S.C.C.A.N. 1695, 1699).  The FDCPA is a strict liability statute.  *Clark v. Capital Credit &*

11  *Collection Servs.*, 460 F.3d 1162, 1175 (9th Cir. 2006).

12         In order to establish a violation of the FDCPA, there are three threshold requirements: (1)

13  the plaintiff targeted by the collection activity must be a "consumer" as defined in 15 U.S.C.

14  § 1692a(3); (2) the defendant must be a "debt collector" as defined in 15 U.S.C. § 1692(a)(6); and

15  (3) the defendant must have committed some act or omission in violation of the FDCPA.  *See*

16  *Robinson v. Managed Accounts Receivables Corp.*, 654 F. Supp. 2d 1051, 1057 (C.D. Cal. 2009)

17  (citing *Withers v. Eveland*, 988 F. Supp. 942, 945 (E.D. Va. 1997)).  Defendants do not challenge

18  the first two requirements, but rather argue that Agnir has failed to support a claim of any violation

19  of the FDCPA.

20         The Amended Complaint is not entirely clear as to which actions Agnir alleges as the basis

21  of Defendants' liability.  From Agnir's briefing, it appears that Agnir alleges liability primarily

22  based on "Defendants [sic] strenuous attempts to preserve their default judgment."  Opp'n to Mot.

23  to Dismiss at 19.  Specifically, after receiving Agnir's counsel's letter of August 29, 2011,

24  requesting a stipulation to set aside the Default Judgment, AC ¶ 31, and Exh. 1, Defendants took the

25  following actions to attempt to preserve their default judgment: (1) Defendant Tenenbaum had two

26  _____

27  [11] The Court further notes that Plaintiff's action for declaratory and injunctive relief may also be
    moot in light of Defendants' admission that Gryphon Solutions "forever gave up its claims" against
    Agnir at the time that its Request for Dismissal of the Superior Court Action was granted, because
28  Gryphon Solutions' claims are now time barred.  Mot. to Dismiss at 10-11.

United States District Court
For the Northern District of California

1    conversations with Agnir's counsel's office on September 7, 2011 (the "September 7, 2011

2    conversations"), which indicated Defendants' unwillingness to stipulate to setting aside the Default

3    Judgment, AC ¶¶ 32, 33[12]; (2) Defendants filed their Opposition to Setting Aside Default on

4    September 27, 2013, AC ¶ 34; and (3) Defendants dismissed their case without prejudice, AC ¶ 36.

5         All of these actions took place within the year prior to the filing of Agnir's Complaint in

6    federal court on August 24, 2012, and are thus clearly within the one-year statute of limitations

7    imposed by both the FDCPA and the RFDCPA.  At the July 18 hearing, Plaintiff's counsel clarified

8    that Agnir also alleges liability based on Defendants' filing of the Affidavit of Identity and Request

9    to Amend Judgment in the Superior Court Action, seeking to amend Agnir's name on the Default

10   Judgment to Elizabeth P. Agnir.  AC ¶ 28.  Agnir concedes that the filing of the Affidavit of

11   Identity falls outside of the one-year statute of limitations, but argues that it remains actionable

12   under the continuing violations doctrine, which "permits recovery 'for actions that take place

13   outside the limitations period if these actions are sufficiently linked to unlawful conduct within the

14   limitations period.'"  *Aho v. AmeriCredit Fin. Servs., Inc.*, 277 F.R.D. 609, 621 (S.D. Cal. 2011)

15   (quoting *Komarova v. National Credit Acceptance, Inc.,* 175 Cal. App. 4th 324, 343 (2009)).  The

16   key in determining whether conduct is sufficiently linked to be considered a "continuing violation"

17   is "whether the conduct complained of constitutes a continuing pattern and course of conduct."

18   *Joseph v. J.J. Mac Intyre Companies*, 281 F. Supp. 2d 1156, 1160 (N.D. Cal. 2003) (applying

19   continuing violations doctrine in the context of FDCPA and RFDCPA claims).  At the time

20   Defendants filed the Affidavit of Identity on May 9, 2011, Defendants had no notice of Agnir's

---

[12] The Amended Complaint makes several claims about these conversations.  First, the Amended
Complaint alleges that Tenenbaum did not disclose that his license to practice law in California
was suspended at the time of the conversations.  Second, the Amended Complaint alleges that
Tenenbaum stated: (1) that he thought service was proper; (2) that Agnir should have addressed
this issue in 2007, (3) that Defendants thought they could overcome the Motion to Set Aside; and
(4) that the claim of identity theft did not apply in this case because the Chase account was opened
while Agnir was married to the alleged identity thief.  AC ¶ 32.  The relationship of these
statements to Agnir's causes of action is not facially apparent.  However, Agnir has clarified that
the September 7, 2011 conversations "are presented to support Plaintiff's allegations that
Defendants failed to investigate her claim of identity theft," and the fact that Tenenbaum "may
have engaged in the unauthorized practice of law is not the thrust of Plaintiff's claims herein."
Opp'n to Mot. to Dismiss at 17.  Plaintiff's counsel confirmed this position at the July 18 hearing.
Accordingly, the Court interprets the September 7, 2011 conversations as allegations of failure to
investigate the claim of identity theft.

16

claims of potential identity theft or failure of service.  On the other hand, Defendants' allegedly

unlawful conduct within the statute of limitations period, which consisted of Defendants' attempts

to defend the Default Judgment and ultimate dismissal of the Superior Court Action, occurred after

Defendants learned of Agnir's allegations of identity theft and failure of service.  Defendants filing

of the Affidavit of Identity, attempts to defend the Default Judgment, and dismissal of the Superior

Court Action do not constitute a continuing pattern and course of conduct because they occurred

before and after Defendants' knowledge of Agnir's allegations.  Moreover, the actions are

distinguishable because the first seeks to enforce the Default Judgment, the second disputes the

validity of the Default Judgment, and the third dismisses the case.  Thus the filing of the Affidavit

of Identity is not sufficiently linked to the allegedly unlawful conduct within the limitations period.

Moreover, as discussed below, Plaintiff has failed to allege actionable conduct within the statutory

period.  Accordingly, the Court does not address this time-barred allegation.

Based on the foregoing, the Court addresses each of Agnir's alleged violations of the

FDCPA.

### a.    Violation of 15 U.S.C. §§ 1692f and 1692f(1)

15 U.S.C. § 1692f provides: "[a] debt collector may not use unfair or unconscionable means

to collect or attempt to collect any debt."  The statute provides a non-exclusive list of conduct that

constitutes a violation of this section, including "(1) The collection of any amount (including any

interest, fee, charge, or expense incidental to the principal obligation) unless such amount is

expressly authorized by the agreement creating the debt or permitted by law."

Agnir does not attempt to argue explicitly that Defendants' actions were unfair or

unconscionable.  Rather, without citation to any authority, Agnir argues that Defendants violated

this section by collecting or attempting to collect an amount "not permitted by law," for the

purposes of 15 U.S.C. § 1692f(1).  Specifically, Agnir contends that Defendants "violated this

section for two reasons.  First, Defendants attempted to collect a debt that Defendants were notified

was the result of identity theft, and was therefore not lawfully owed.  Second, Defendants attempted

to collect a debt based on a judgment that was void due to lack of service of process (i.e. personal

Case No.: 12-CV-04470-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS; GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO STRIKE; DENYING AS MOOT PLAINTIFF'S APPLICATION FOR DISCOVERY

United States District Court
For the Northern District of California

1    jurisdiction) on AGNIR, and was therefore not lawfully owed."  Opp'n to Mot. to Dismiss at 19.

2    Agnir does not elaborate on either of these theories, or provide any authority for either claim.

3     As noted above, the only actions that Agnir alleges Defendants took within the one year

4    statutory period before filing her complaint were: (1) the September 7, 2011 conversations; (2)

5    filing the Opposition to Setting Aside Default in the Superior Court Action; and (3) dismissing the

6    Superior Court Action without prejudice.  None of these actions are alleged to have involved the

7    collection or attempted collection of any amount of money from Agnir; rather they involved an

8    alleged failure to investigate allegations of identity theft, an opposition to vacating a default

9    judgment, and a failure to dismiss claims with prejudice.

10    Agnir argues that these actions nonetheless fall within the definition of "attempt[s] to

11   collect" a debt for the purposes of Section 1692f and Section 1692f(1).  Opp'n to Mot. to Dismiss at

12   19.  According to Agnir, "it strains credulity to assert that Defendants [sic] strenuous attempts to

13   preserve their default judgment against AGNIR did not constitute affirmative attempts to collect the

14   debt – why else would Defendants want the judgment if not to collect it? . . . .  Even Defendants'

15   act of dismissing the state court lawsuit *without prejudice* reserves their right to continue to collect

16   the debt from AGNIR or assign the debt for collection in the future."  *Id.*  While criticizing

17   Defendants for failing to offer authority for the "absurd" notion that these actions were not

18   "attempts to collect" a debt, Agnir offers no authority in support of her own novel theory that

19   defending a default judgment and dismissing an action without prejudice constitute attempts to

20   collect a debt.  *Id.*

21    The Court is not persuaded by Agnir's expansive interpretation of the statute.  In the context

22   of interpreting whether the FDCPA applies to the litigating activities of lawyers, the Supreme Court

23   has noted that "[t]o collect a debt or claim is to obtain payment or liquidation of it, either by

24   personal solicitation or legal proceedings."  *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995) (quoting

25   Black's Law Dictionary at 263 (6th ed. 1990).  Based on this definition, the Supreme Court

26   reasoned that the FDCPA does apply to lawyers, to the extent that a lawyer who "regularly tries to

27   obtain payment of consumer debts through legal proceedings is a lawyer who regularly 'attempts'

28

18

1   to 'collect' these consumer debts." *See id.* (quoting Black's Law Dictionary at 263).  Following

2   this reasoning, the plain meaning of an "attempt to collect a debt" is an attempt to obtain payment.

3   　　By contrast, Agnir has not alleged that Defendants sought to "obtain payment" in any of the

4   three actions which occurred in the year before she filed her complaint.  First, Agnir's counsel has

5   clarified that the September 7, 2011 conversations, are presented as evidence that Defendants failed

6   to investigate Agnir's claim of identity theft.  *See supra* note 13.  The pleadings do not suggest that

7   Defendants sought to obtain payment from Agnir during those conversations.  Rather, the

8   conversations focused on the disputed validity of the Default Judgment.  *See id.*

9   　　Second, Defendants filed the Opposition to Setting Aside Default, raising a series of legal

10   arguments, discussed more fully below.  Plaintiff has not argued that Defendants sought to obtain

11   any payment from her in conjunction with this legal motion; rather, Defendants pursued a legal

12   determination of the status of the Default Judgment.  As Agnir notes, this was a necessary predicate

13   for attempting to obtain payment from Agnir.  However, it was also fully consistent with

14   renouncing any right to future collection if the Default Judgment were to be set aside—which is

15   what in fact occurred.   Indeed, the last of the alleged "attempts to collect" was the very act of

16   dismissing the collection action, which Defendants did after the Default Judgment was vacated.

17   Gryphon Solutions represents that it "forever gave up its claims" when it dismissed the case against

18   Agnir because Gryphon Solutions' claim is now time barred.  *See* Mot. to Dismiss at 10-11.  Agnir

19   has failed to explain what definition of "attempt to collect" would encompass these actions.

20   　　Accordingly, the Court finds that Agnir has failed to allege conduct that could violate 15

21   U.S.C. §§ 1692f and 1692f(1).

22   　　　　**b.**　　**15 U.S.C. § 1692e**

23   　　The determination that Defendants did not actually attempt to collect from Agnir does not

24   mean that Defendants' actions were immune from the application of the FDCPA.  15 U.S.C.

25   §§ 1692e explicitly covers a broader range of activity than § 1962f, providing that "[a] debt

26   collector may not use any false, deceptive, or misleading representation or means *in connection*

27

28

Case No.: 12-CV-04470-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS; GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO STRIKE; DENYING AS MOOT PLAINTIFF'S APPLICATION FOR DISCOVERY

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1  | *with* the collection of any debt." (emphasis added).  The statute includes a non-exclusive list of

2  | examples, including several which Agnir specifically alleges.

3  |          Agnir first alleges that "Defendants attempted to collect the CHASE BANK fraudulent

4  | account from Plaintiff, an action that cannot lawfully be taken, in violation of 15 U.S.C. § 1692e,

5  | 1692e(5) and 1692e(10)."  AC ¶ 68(d).  15 U.S.C. § 1692e(5) prohibits the "threat to take any

6  | action that cannot legally be taken or that is not intended to be taken."  15 U.S.C. § 1692e(10)

7  | prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect

8  | any debt or to obtain information concerning a consumer."  However, as noted above, Defendants

9  | did not in fact seek to collect on the account, but rather failed to investigate a claim of identity theft,

10 | and disputed setting aside the Default Judgment.  Once the Default Judgment was set aside,

11 | Defendants dismissed the Superior Court Action.  Nor has Agnir alleged that Defendants threatened

12 | to collect the Default Judgment.  Rather, Defendants complied with the appropriate legal procedures

13 | for determining the validity of the Default Judgment, and dismissed the case after the Default

14 | Judgment was vacated.  Accordingly, the Court does not find that Agnir has plausibly alleged either

15 | an attempt to collect or a threat to take action that cannot be legally taken.

16 |          Agnir further alleges a series of violations of 15 U.S.C. § 1692e based on

17 | misrepresentations.  She alleges that "Defendants made and used false deceptive and misleading

18 | misrepresentations in an attempt to collect the CHASE BANK fraudulent account, in violation of

19 | 15 U.S.C. §§ 1692e and 1692e(10)."  AC ¶ 68(a).  15 U.S.C. § 1692e(10) prohibits "[t]he use of

20 | any false representation or deceptive means to collect or attempt to collect any debt or to obtain

21 | information concerning a consumer."  Agnir also alleges that "Defendants misrepresented the

22 | character, amount or legal status of the CHASE BANK fraudulent account, in violation of 15

23 | U.S.C. § 1692e(2)(A)."  AC ¶ 68(b).  15 U.S.C. § 1692e(2)(A) prohibits the false representation of

24 | "the character, amount, or legal status of any debt."  Furthermore, Agnir alleges that "Defendants

25 | misrepresented the compensation which may be lawfully received by Defendants for the collection

26 | of the CHASE BANK fraudulent account, in violation of 15 U.S.C. § 1692e(2)(B)."  AC ¶ 68(c).

27 |

28 |

Case No.: 12-CV-04470-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS; GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO STRIKE; DENYING AS MOOT PLAINTIFF'S APPLICATION FOR DISCOVERY

15 U.S.C. § 1692e(2)(B) prohibits the false representation of "any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt."

Again, Agnir offers no authority in support of these claims, and does not identify which alleged conduct provides the bases for these allegations.  Agnir's Opposition focuses on the theory that Defendants attempted to collect an unlawful debt, which the Court has rejected.  *See* Opp'n to Mot. to Dismiss at 22.   In addition, the Opposition identifies one specific alleged misrepresentation, arguing that Defendants "restated, ratified and adopted as their own the false statements" in the Proof of Service of Summons, and "argued that [s]ervice of process, under California Code of Civil Procedure, Section 415.20 was effectuated."  Opp'n to Mot. to Dismiss at 22.[13]  Agnir does not identify any other false statements in the Proof of Service of Summons.

The Court finds that Agnir's allegations of false representations are contradicted by the documents of which the Court has taken judicial notice.  Specifically, Defendants' Opposition to Setting Aside Default argued that the proof of service was facially valid, because it stated that employees at Agnir's place of business where substituted service was allegedly effectuated told the process server that Agnir was "not in" on four separate dates, and that the process server accordingly served an assistant manager in that location.  Plaintiff's RJN, Exh. Q, at 3.  Defendants further argued that service of process was made by a registered process server, thereby establishing a presumption of the facts stated in the proof of service, under California Evidence Code Section 647.[14]  *Id.*  Agnir did not dispute any of these facts, but rather argued that the location where service was allegedly effectuated was the Sunnyvale, CA office of her employer, rather than the San Jose, CA office where Agnir in fact worked, and that Agnir did not know the assistant manager whom the process server served.  Plaintiff's RJN, Exh. M., Mem. in Supp. of Mot. to Set Aside Default, at 4.

---

[13] California Code of Civil Procedure § 415.20 provides in relevant part that if personal service cannot be effectuated with reasonable diligence, service may be effectuated by leaving a copy of the summons and complaint at the person's usual place of business, in the presence of a person apparently in charge of the place of business, and by thereafter mailing a copy of the summons and complaint to the same address.   *See* Cal. Civ. Proc. § 415.20.

[14] "The return of a [registered process server] upon process or notice establishes a presumption, affecting the burden of producing evidence, of the facts stated in the return."  Cal. Evid. Code § 647.

21

Case No.: 12-CV-04470-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS; GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO STRIKE; DENYING AS MOOT PLAINTIFF'S APPLICATION FOR DISCOVERY

Defendants responded that service of process under California Code of Civil Procedure § 415.20 was effectuated because an assistant manager "would be sufficiently capable of advising the registered process server whether AGNIR was employed, whether in the Sunnyvale facility or otherwise," and because the main office of Agnir's employer should be construed as the "usual place of business" for purposes of substitute service. *Id.* Agnir's Amended Complaint does not allege that these arguments about the legal sufficiency of the substitute service were false or misleading.

Additionally, Defendants' Opposition to Setting Aside Default raised other legal arguments that Agnir has not alleged were either factually false or misleading. First, Defendants contended that Agnir's September 8, 2011 Motion to Set Aside Default was untimely, in part because Agnir engaged counsel in March of 2007 to dispute alleged charges on her credit report arising from the Chase account. The Opposition to Setting Aside Default further argued that Agnir had actual or constructive notice of this action because "[c]orresponding to the three credit bureaus disputing the subject account is sufficient to put AGNIR, through counsel [sic] at a minimum to have researched the possibility that the indebtedness had risen [sic] to legal action or judgment." *Id.* at 5.

The Superior Court's Order, Plaintiff's RJN, Exh. S., stated only that Agnir's Motion to Set Aside Default was granted, without providing reasoning. Although the Superior Court Judge did not find in Defendants' favor, there is no indication in the record that Defendants' arguments were found to be false or misleading in any way.

In conclusion, the Court does not find that Agnir has plausibly alleged that Defendants made misrepresentations in the Opposition to Setting Aside Default, as opposed to legal arguments that were subsequently rejected by the Superior Court. Nor does the Court find that Agnir has alleged that Defendants threatened to take any action that could not be legally taken. Accordingly, the Court does not find that Plaintiff has plausibly pleaded allegations of 15 U.S.C. § 1692e, or any of its subsections.

### 3.      Third Cause of Action

Case No.: 12-CV-04470-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS; GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO STRIKE; DENYING AS MOOT PLAINTIFF'S APPLICATION FOR DISCOVERY

1   Agnir's opposition to dismissing her third cause of action for violations of the RFDCPA

2   rests entirely on Agnir's same arguments in support of her FDCPA claims.  *See* Opp'n to Mot. to

3   Dismiss at 23 ("[A] complaint that sufficiently alleges a violation of the FDCPA also alleges a

4   violation of the RFDCPA.").  Because the Court finds that Agnir has failed to sufficiently state

5   claims under the FDCPA, the Court also finds that Agnir's RFDCPA claims fail to the extent that

6   they rely on FDCPA violations.

7   In addition to the RFDCPA claims predicated on FDCPA violations, Agnir's third cause of

8   action also alleges independent violations of the RFDCPA not predicated on the FDCPA.  First,

9   Agnir alleges violations of California Civil Code Section 1788.13(e), which prohibits false

10   representations that a consumer's debt may be increased by additional fees, if such fees are

11   unlawful, AC ¶ 78, and California Civil Code Section 1788.14(b), which prohibits attempting to

12   collect from a debtor the debt collector's fee or charge, except as permitted by law.  *Id.*  Agnir

13   alleges these violations based on: Defendants' alleged misrepresentations of the character, amount,

14   or legal status of the Chase account, AC ¶ 78(b); Defendants' misrepresentations of the

15   compensation which may be lawfully received by Defendants for collection of the Chase account,

16   AC ¶ 78(c); and Defendants' allegedly unlawful attempts to collect the Chase account.  AC ¶ 78(d).

17   These allegations fail for the same reasons as her parallel claims under the FDCPA.  *See supra*

18   Section IV.B.2.  Second, as noted above, Agnir's claim under California Civil Code Section

19   1788.18 that Defendants attempted to collect an obligation that was known to be a result of identity

20   theft is legally insufficient.  Agnir did not provide Defendants with a copy of a police report "filed

21   by the debtor alleging that the debtor is the victim of an identity theft crime . . . for the specific debt

22   being collected by the debt collector," as required by the statute.  *See* Cal. Civ. Code § 1788.18;

23   *supra* Section IV.B.2.a.i.  Instead of providing Defendants with a police report regarding the Chase

24   account that is the subject of the instant litigation, Agnir provided to Defendants a police report

25   regarding her claim of identity theft regarding a separate and unrelated account with Asset

26   Acceptance, LLC.

27

28

Case No.: 12-CV-04470-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS; GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO STRIKE; DENYING AS MOOT PLAINTIFF'S APPLICATION FOR DISCOVERY

*United States District Court*
For the Northern District of California

1    In sum, the Court GRANTS Defendants' Motion to Dismiss, and dismisses all three of

2    Agnir's causes of action for failure to state a claim upon which relief may be granted.

### 4.    Leave to Amend

4    Because the Court has found the Amended Complaint should be dismissed, it must

5    determine whether to grant leave to amend the complaint.  Under Rule 15(a) of the Federal Rules of

6    Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind

7    "the underlying purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the

8    pleadings or technicalities."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc)

9    (internal quotation marks and citation omitted).  Nonetheless, a court "may exercise its discretion to

10   deny leave to amend due to "undue delay, bad faith or dilatory motive on part of the movant,

11   repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the

12   opposing party . . . , [and] futility of amendment."  *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d

13   876, 892-93 (9th Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (alterations in

14   original).

15   The Court finds that amendment of Agnir's first cause of action would be futile, because the

16   cause of action is barred by a compulsory counterclaim.  However, at this stage, the Court cannot

17   determine if Agnir would be unable to plead violations of the FDCPA or RFDCPA in an amended

18   complaint.  Accordingly, the Court grants Agnir leave to amend with respect to her second and third

19   causes of action, within 30 days of this Order.  *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir.

20   2000) (noting that leave to amend under Rule 15(a) "shall be freely given when justice so

21   requires").

### C.    Anti-SLAPP Motion to Strike

23   Lastly, the Court addresses Defendants' anti-SLAPP motion, with respect to Agnir's state

24   law claims.[15]  Because a successful anti-SLAPP motion results in the award of fees, a court must

25   consider an anti-SLAPP motion even if it dismisses the underlying claim without leave to amend.

---

[15] Defendants rightly note that the anti-SLAPP provisions apply only to state law claims.  *See* Mot.
to Strike at 8; *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010) ("[A] federal court can
only entertain anti-SLAPP special motions to strike in connection with state law claims.").

24

Case No.: 12-CV-04470-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS; GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO STRIKE; DENYING AS MOOT PLAINTIFF'S APPLICATION FOR DISCOVERY

United States District Court
For the Northern District of California

*See White v. Lieberman*, 103 Cal. App. 4th 210, 220 (2002); *Collins v. Allstate Indem. Co.*, 428 Fed. Appx. 688, 690 (9th Cir. 2011).

As noted above, in considering an anti-SLAPP motion, the moving defendant must make a prima facie showing that the plaintiff's suit arises from protected activity—specifically, an act in furtherance of the defendant's constitutional right of petition or free speech. *See Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013) (citing *Batzel v. Smith*, 333 F.3d 1018, 1024 (9th Cir. 2003)). The burden then shifts to the plaintiff to establish a reasonable probability that it will prevail on its claim in order for that claim to survive dismissal. *See id.* (citing *Gilbert v. Sykes*, 147 Cal. App. 4th 13, 22 (2007)).

### 1.    Protected Activity

The anti-SLAPP statute broadly defines protected activity, including "(1) any written or oral statement or writing made before a . . . judicial proceeding . . . , (2) any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body." Cal. Civ. Proc. Code § 425.16. The scope of these provisions is interpreted expansively. *See Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106, 1121 (1999). "[S]tatements, writings and pleadings in connection with civil litigation are covered by the anti-SLAPP statute, and that statute does not require any showing that the litigated matter concerns a matter of public interest." *Rohde v. Wolf*, 154 Cal. App. 4th 28, 35 (2007) (citing *Briggs*, 19 Cal. 4th at 115). "Determining whether a cause of action arises from protected speech or petitioning activity requires a focus on the *principal thrust* or *gravamen* of the cause of action. *People ex rel. Fire Ins. Exch. v. Anapol*, 211 Cal. App. 4th 809, 823 (2012), *reh'g denied* (Jan. 3, 2013), *review denied* (Mar. 20, 2013) (emphasis in original); *Martinez v. Metabolife Int'l*, 113 Cal. App. 4th 181, 188 (2003). "Where a cause of action alleges both protected and unprotected activity, the cause of action will be subject to section 425.15 unless the protected activity is 'merely incidental' to the unprotected conduct." *Mann v. Quality Old Time Service, Inc.*, 120 Cal. App. 4th 90, 103 (2004) (quoting *Scott v. Metabolife Int'l*, 115 Cal. App. 4th 404 (2004)).

Case No.: 12-CV-04470-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS; GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO STRIKE; DENYING AS MOOT PLAINTIFF'S APPLICATION FOR DISCOVERY

1    In this case, the gravamen of Agnir's complaint appears to relate to Defendants' Opposition

2  to Setting Aside Default, and statements made in connection to this Opposition.  Agnir notes that

3  Defendants describe their actions as merely "those directly related to filing of court documents,

4  speaking with AGNIR about imminent court action, or defending against Agnir's petition for

5  motion to vacate."  Opp'n to Mot. to Strike at 13 (quoting Mot. to Strike at 10).  Agnir does not

6  dispute this characterization, but rather argues "[b]y Defendants' reasoning, no violation of the

7  FDCPA or RFDCPA could lie where the behavior complained of occurs in the course of litigation."

8  *Id.*  Agnir cites not authority for this proposition.

9    The Court does not find merit in Agnir's argument.  First, because the anti-SLAPP statute

10  applies only to state law causes of action, the FDCPA is not implicated by an anti-SLAPP motion.

11  With respect to the RFDCPA, Agnir appears to analogize without citation or reference to cases that

12  have found the California litigation privilege inapplicable in the context of the RFDCPA.  For

13  example, the California Court of Appeal in *Komarova v. Nat'l Credit Acceptance, Inc.* reasoned

14  that applying the litigation privilege to bar RFDCPA actions "would effectively vitiate the

15  Rosenthal Act and render the protections it affords meaningless."  175 Cal. App. 4th 324, 338

16  (2009).  The *Komarova* Court noted that exceptions to the litigation privilege have been recognized

17  under statutes that "(1) are 'more specific' than the privilege, and (2) would be 'significantly or

18  wholly inoperable' if the privilege applied."  *Id.* at 339 (quoting *Action Apartment Ass'n, Inc. v.

19  City of Santa Monica*, 41 Cal. 4th 1232, 1246 (2007)).  However, in the same opinion, the

20  *Komarova* Court distinguished between the litigation privilege and the reach of the anti-SLAPP

21  statute, noting that the "the two are not co-extensive."  *Id.* at 342-43 (quoting *Kibler v. Northern

22  Inyo County Local Hospital Dist.*, 39 Cal. 4th 192, 201-202 (2006), for the proposition that the

23  "official proceedings privilege and anti-SLAPP statute do not cover 'the same or analogous subject

24  matter' because the former is 'a substantive rule of law' and the latter 'is a procedural device to

25  screen out meritless claims'").

26    Unlike the litigation privilege, which could effectively vitiate the protections of the

27  RFDCPA because debt collection activity may necessarily involve some form of litigation, anti-

28

Case No.: 12-CV-04470-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS; GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO STRIKE; DENYING AS MOOT PLAINTIFF'S APPLICATION FOR DISCOVERY

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    SLAPP motions do not vitiate RFDCPA protections.  As discussed above, anti-SLAPP motions

2    apply only if the moving defendant makes a prime facie showing that the plaintiff's suit arises from

3    protected activity and the plaintiff cannot establish a reasonable probability that she will prevail on

4    her claim.  Thus, anti-SLAPP motions would only apply to RFDPCA claims which do not have a

5    reasonable probability of prevailing and consequently would not provide RFDPCA protections to a

6    plaintiff.   Accordingly, courts have found that anti-SLAPP motions may apply to such RFDCPA

7    claims.  *See, e.g.*, *Washington v. Richards*, No. 11-00749, 2011 WL 3564432 (S.D. Cal. Aug. 11,

8    2011) (granting anti-SLAPP motion to strike RFDCPA allegations); *Scott v. Kelkris Associates,*

9    *Inc.*, No. 10-1654, 2010 WL 4393274, at *2 (E.D. Cal. Oct. 29, 2010) (finding RFDCPA claim to

10   arise out of protected activity for the purposes of anti-SLAPP analysis, but denying anti-SLAPP

11   motion as to that claim because the claim had a reasonable probability of prevailing).  Agnir cites

12   no authority to the contrary.  Moreover, at least one court considered an anti-SLAPP motion against

13   an RFDCPA claim even though the litigation privilege applied to that RFDCPA claim.  *See Mello v.*

14   *Great Seneca Fin. Corp.*, 526 F. Supp. 2d 1024, 1031 (C.D. Cal. 2007) (finding an RFDCPA

15   exception to the litigation privilege at the second step of the anti-SLAPP analysis).

16           Having found that anti-SLAPP motions may apply to RFDCPA claims, the Court now

17   addresses the first prong of the anti-SLAPP analysis: whether the moving defendant has made a

18   prima facie showing that plaintiff's suit arises from protected activity, which includes statements

19   and writings in connection with civil litigation.  *Rohde v. Wolf*, 154 Cal. App. 4th at 35 (2007).  The

20   Court finds that Agnir's causes of action arise out of Defendants' protected activity, i.e.,

21   Defendants' September 7, 2011 conversations with Agnir's counsel, filing of the Opposition to

22   Setting Aside Default in the Superior Court Action, and dismissal of the Superior Court Action

23   without prejudice.  Thus, Defendants have satisfied the first prong of the anti-SLAPP analysis by

24   making a prima facie showing that Agnir's suit arises from Defendants' protected activity.  *See*

25   *Makaeff*, 715 F.3d at 261.

26           **2.       Likelihood of Prevailing**

27

28

Case No.: 12-CV-04470-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS; GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO STRIKE; DENYING AS MOOT PLAINTIFF'S APPLICATION FOR DISCOVERY

United States District Court
For the Northern District of California

1    Once the Court finds the anti-SLAPP movant has established covered conduct, the burden

2    shifts to the plaintiff to demonstrate "a probability of prevailing on the claim." *Equilon Enters. V.*

3    *Consumer Cause, Inc.*, 29 Cal. 4th 53, 67 (2002). "In denying a motion to strike on the ground that

4    the plaintiff has established the requisite probability of success, . . . the trial court necessarily

5    concludes that the plaintiff has substantiated a legally tenable claim through a facially sufficient

6    evidentiary showing." *Wilson v. Parker, Covert & Chidester*, 28 Cal. 4th 811, 821 (2002); *see also*

7    *Briggs v. Eden Council for Hope & Opportunity,* 19 Cal. 4th 1106, 1123 (1999) (a plaintiff must

8    have "stated and substantiated a legally sufficient claim") (quotations omitted).

9    For the same reasons that the Court granted Defendants' motion to dismiss both of Agnir's

10    state law claims for failure to state a claim upon which relief may be granted, the Court does not

11    find Agnir can establish a legally tenable claim. *See Adobe Sys. v. Coffee Cup Partners*, No. 11-

12    2243, 2012 WL 3877783, at *16-18 (N.D. Cal. Sept. 6, 2012) (granting anti-SLAPP motion after

13    dismissing claims pursuant to Rule 12(b)(6)); *Westfall v. City of Crescent City*, No. 10-5222, 2011

14    WL 2110306, at *11 (N.D. Cal. May 26, 2011) (same).

15    This finding moots Agnir's Application for Discovery pursuant to Federal Rule of Civil

16    Procedure 56(d), which sought to continue the hearing on this motion to allow Agnir to conduct

17    discovery. Federal courts allow for appropriate discovery before granting an anti-SLAPP motion

18    due on grounds of factual insufficiency, because the Federal Rules of Civil Procedure contemplate

19    that the "sufficiency of a plaintiff's case will be tested prior to discovery only for legal sufficiency."

20    *Makaeff v. Trump Univ.*, 715 F.3d 254, 274 (9th Cir. 2013) (Kozinski, J., dissenting) (citing Fed. R.

21    Civ. P. 12); *see also Metabolife Int'l v. Wornick,* 264 F.3d 832, 845 (9th Cir. 2001) (holding that the

22    "discovery-limiting aspects" of the anti-SLAPP statute do not apply in federal court). However, in

23    this case, the Court's anti-SLAPP ruling is premised on the legal insufficiency of Agnir's pleadings.

24    As a result, further facts would not alter the Court's analysis, much less prove "essential to justify"

25    Agnir's opposition, as required by Rule 56(d). Accordingly, the Court GRANTS Defendants' anti-

26    SLAPP motion as to Agnir's claims, and DENIES Agnir's Application for Discovery.[16]

27    _____

[16] As noted above, Agnir has been granted leave to amend her complaint with respect to the second
28    and third causes of action. However, she is cautioned that any amended complaint may be

28

Case No.: 12-CV-04470-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS; GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO STRIKE; DENYING AS MOOT PLAINTIFF'S APPLICATION FOR DISCOVERY

United States District Court
For the Northern District of California

### V.     CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Defendants' Motion to Dismiss Agnir's Complaint in its entirety, GRANTS in part and denies in part Defendants' Motion to Strike, and DENIES as moot Agnir's Application for Discovery.  Should Agnir elect to file an amended complaint curing the deficiencies discussed herein with respect to the second and third causes of action, she shall do so within 30 days of the date of this Order.  Failure to meet the 30-day deadline to file an amended complaint or failure to cure deficiencies identified in this Order will result in a dismissal with prejudice.  Agnir may not add new causes of action or parties without leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated: August 9, 2013

_Lucy H. Koh_
LUCY G. KOH
United States District Judge

---

subjected to a further anti-SLAPP motion.  *See Gressett v. Contra Costa Cnty.*, No. 12-3798, 2013 WL 2156278, at *35 (N.D. Cal. May 17, 2013) (quoting *Verizon Del. Inc. v. Covad Comms. Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004) (granting anti-SLAPP motion without leave to amend would collide with Federal Rule of Civil Procedure 15(a)'s policy favoring liberal amendment, but noting that successful anti-SLAPP motions result in the award of fees, and warning that "[i]f the offending claims remain in the first amended complaint, the anti-SLAPP remedies remain available to defendants."); *Westfall v. City of Crescent City*, No. 10522, 2011 WL 2110306, at *11 (N.D. Cal. May 26, 2011) (granting motion to dismiss fourth cause of action without prejudice pursuant to Rule 12(b)(6), granting anti-SLAPP motion with respect to the same cause of action, and instructing Defendants to file for attorneys' fees and costs).

Case No.: 12-CV-04470-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS; GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO STRIKE; DENYING AS MOOT PLAINTIFF'S APPLICATION FOR DISCOVERY